# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PETER DELANCE EMICK,

      Plaintiff,

      v.

BOROUGH OF
MONTOURSVILLE, et al.,

      Defendants.

CIVIL ACTION NO. 4:16-cv-01856

(BRANN, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

This matter was initiated on August 16, 2016, when the *pro se* plaintiff, Peter Delance Emick, filed a civil rights complaint in the Court of Common Pleas of Lycoming County, Pennsylvania. (Doc. 1-1). The state court action was timely removed to this Court by the defendants on September 8, 2016. (Doc. 1).

The defendants have moved to dismiss the complaint for failure to state a claim. (Doc. 2; Doc. 3; *see also* Doc. 4; Doc. 5). When the *pro se* plaintiff failed to timely file a brief in opposition to either of the motions to dismiss, we *sua sponte* granted an extension of time and directed him to file his briefs in opposition by November 16, 2016. (Doc. 6). Emick filed a motion for a 30-day extension of this deadline, which we granted. (Doc. 8;

Doc. 9). Notwithstanding this extension of time, Emick failed to file a brief in opposition to either of the pending motions to dismiss, nor has he filed any other submissions since his November 2016 request for an extension of time.

## I. BACKGROUND

In his *pro se* "natural rights complaint,"[1] Emick has alleged that he was subjected to a traffic stop at approximately 1:00 a.m. on Saturday, August 16, 2014, while he was driving, along with an inebriated but unnamed passenger, on the streets of Williamsport, Pennsylvania. Emick has alleged that defendant Jason Scott Bentley, a police offer employed by the Borough of Montoursville and a member of a county DUI-enforcement task force, "accosted, forced to stop, and interrogated" him. Officer Bentley asked Emick to produce his driver's license, and Emick produced a "foreign" driver's license bearing ID #1455319, issued by the "Kingdom of

---

[1] In addition to the complaint, we have taken judicial notice of the publicly available docket of traffic and misdemeanor proceedings against Emick in the state magisterial district court serving Lycoming County, and a September 11, 2014, arrest warrant issued in connection with those proceedings. (Doc. 3-2; Doc. 3-3; Doc. 3-4; Doc. 3-5). *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967).

Heaven."[2]

Emick advised Officer Bentley that he was a "transient foreigner, a national[] or state national born in the Republic of California travelling in a private automobile for non-commercial purposes," and asked if he would be permitted to proceed on his way. Officer Bentley asked Emick if he had consumed any alcohol, and Emick denied having done so. Officer Bentley asked Emick to turn the automobile off and exit the venicle. Emick then participated in a video-recorded roadside sobriety test. Upon completion of the sobriety test, Officer Bentley asked Emick to submit to a breathalyzer test, which Emick refused. Officer Bentley admitted to Emick that he had found no apparent alcohol-related impairment.

Officer Bentley then advised Emick that he could not accept Emick's "Kingdom of Heaven" issued driver's license and vehicle registration, and that Emick was required to have a state-issued drivers license and state-

---

[2] "'The Kingdom of Heaven is an organization associated with The Embassy of Heaven in Stayton, Oregon. Calling itself 'God's Government on Earth,' the Embassy of Heaven issues passports, driver and business licenses, and other identification cards to people who have 'separated' from state government and pay [it] a fee.' The Embassy of Heaven also 'believes, among other things, that the state does not have the power to issue driver's licenses or require registration of motor vehicles.'" *Harris v. Wenzel*, No. 4:15-cv-00135, 2015 WL 4092408, at *1 n.1 (M.D. Pa. July 7, 2015) (quoting other sources).

issued automobile registration to operate an automobile on the highways.

Officer Bentley requested Emick's address for processing. Emick advised Officer Bentley that he had no mailbox or street address to provide, reiterating that he was not a citizen or resident of Pennsylvania. Emick offered to provide an e-mail address, which Officer Bentley refused. Officer Bentley threatened to arrest Emick for vagrancy based on his inability to provide an address.

Emick informed Officer Bentley of other prior interactions with state police officers who permitted him to continue on his way despite his lack of proper documentation. Emick alleges that another, unnamed officer who was recording video of the traffic stop called him a liar, and a third, unnamed officer approached him "in a threatening manner as if to incite violence." No use of physical force occurred, however.

Emick was placed under arrest. He was searched, handcuffed, and transported to the Williamsport City Police Department by Officer Bentley and an unnamed Williamsport police officer. Emick's passenger was left to walk home.

At the police station, Emick alleges that he was chained to a bench and left unsupervised for a period of approximately two hours, without any

opportunity to use a toilet. After two hours, he was permitted to use a restroom and the two police officers—Officer Bentley and the unnamed Williamsport police officer—transported him to the office of a state magistrate in Muncy, Pennsylvania.

Based on publicly available state court records, Emick was charged with the summary traffic offenses of driving without a license and driving an unregistered vehicle. According to his complaint, at his initial appearance before a state magistrate on these charges, Emick appears to have asserted a jurisdictional defense and refused to enter a plea. The state magistrate released Emick on the condition that he post "collateral" (likely bond) of $432.50, which Emick paid. Officer Bentley allegedly advised Emick that he was free to recover his automobile, which had been towed to Dincher's Auto Body.

Emick was released from custody at approximately 4:00 a.m. in Muncy. He walked nine miles to Montoursville, until approximately 7:00 a.m., when a passing acquaintance stopped and gave him a ride to Dincher's Auto Body in Montoursville. Emick's vehicle was not there. Emick and his acquaintance went to the Williamsport Police Department in search of his automobile. Outside the police department, they

encountered defendant Jodie A. Miller, a police officer employed by the City of Williamsport. Officer Miller informed Emick that his vehicle had been transported to Wood's Garage in Williamsport.

Emick and his acquaintance drove to Wood's Garage and found his automobile, unlocked in an unsecure parking lot. Because the garage was closed, Emick returned later that evening, at 7:00 p.m., to retrieve his automobile. At that time, Emick noticed that his license plate had been removed or stolen.

On August 20, 2014, Emick was notified by an acquaintance of a social media posting reporting that a warrant had been issued for Emick's arrest on misdemeanor theft of services charges, based on a criminal complaint filed by Officer Miller. Emick had apparently reclaimed his vehicle without paying towing fees to Wood's Garage. In his complaint, Emick alleges that he understood Officer Bentley's statement that he was free to recover his automobile to mean that any outstanding fees related to the recovery of his vehicle were part of the payment he made at the state magistrate's office. Emick alleges that Officer Miller's charge against Emick caused injury to Emick's "sterling reputation."

Emick alleges that, on September 18, 2014, he was arrested—

"abducted [and] handcuffed"—by state police on the outstanding theft-of-services arrest warrant. Emick alleges that an unnamed state trooper drove him to the Williamsport Police Department office, placing his "life in jeopardy" by speeding and using a computer while driving his police cruiser. After arriving at the Williamsport Police Department, Emick was processed and transported to the office of a state magistrate in Williamsport. Emick was shown an invoice for $300 due in connection with the towing of his automobile. He paid the $300 and the pending theft-of-services charge was withdrawn. Emick subsequently spoke with the owner of Wood's Garage, who advised him that Officer Miller initiated the theft-of-services charge on his own initiative when he found that Emick had removed the vehicle from the premises of Wood's Garage.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren*

*Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well

as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.  DISCUSSION

Emick's *pro se* civil rights complaint names as party defendants two individual police officers, Bentley and Miller, and their respective employers, the Borough of Montoursville and the City of Williamsport. The complaint expressly references 42 U.S.C. § 1983 and claims that the defendants

> deprive[d] Emick of his right to freedom of travel, right to associate/not associate, right to contract/not contract, right to privacy, freedom from unreasonable search and seizures, right to private property, right to trial by jury, and the right to due process . . . [by] stopping Emick's free travel, detaining him and his possessions, demanding money in exchange for freedom and absconded property, requiring a state citizenship to travel in their body politic unmolested on roads they claim full jurisdiction of, forcing involvement in a contract, removing and keeping private property, and stealing personal identity in the process.

(Doc. 1-1, at 15). Emick claims that the defendants' conduct violated his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and his rights under the Pennsylvania Constitution and Pennsylvania common law. (*Id.*). He seeks a declaration

that the defendants violated his rights, an injunction compelling the defendants to expunge his arrest record (including personal identifiers), a broad injunction enjoining the defendants from repeating the conduct at issue in this action, and an award of compensatory and punitive damages. (*Id.* at 15–16).

## A. Declaratory Relief

In his complaint, Emick asks that this Court "declare" that the defendants' conduct violated his federal rights. What he has requested, however, is not "declaratory relief in the true legal sense." *Corliss v. O'Brien*, 200 Fed. App'x 80, 84 (3d Cir. 2006); *see also* 28 U.S.C. § 2201; Fed. R. Civ. P. 57. "Declaratory judgment is inappropriate solely to adjudicate past conduct. Nor is declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss*, 200 Fed. App'x at 84. Accordingly, the complaint should be dismissed to the extent it requests declaratory judgment.

## B. First Amendment Claim

Emick appears to claim that the defendants violated his First Amendment rights by infringing upon his First Amendment right to free association. Emick appears to contend either that Officer Bentley denied

him the right to freely associate with his erstwhile passenger when he was placed under arrest, or that his arrest forced him to associate with Officer Bentley and other law enforcement personnel against his will.

As the Supreme Court of the United States has recognized:

> An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed. . . . . [W]e have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

*Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). A personal relationship or social friendship, such as that between Emick and his passenger, is not the sort of association protected by the First Amendment. *See id.*; *Cox v. Crowe*, Civil Action No. 09-5-JBC, 2011 WL 31080, at *3 (E.D. Ky. Jan. 5, 2011). Moreover, any claim that Emick's First Amendment free association rights are implicated by his compulsory "association" with police officers and a state magistrate as a result of the traffic stop and court proceedings is patently frivolous.

Accordingly, it is recommended that Emick's First Amendment free association claim be dismissed for failure to state a claim.

## C. Fifth Amendment Claim

Emick appears to claim that the defendants violated his Fifth Amendment rights by depriving him of liberty or property without due process of law.[3] But the due process clause of the Fifth Amendment only applies to the acts of the federal government; it does not apply to the acts or conduct of state or local government officials. *See Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, at 237–38 (M.D. Pa. 1995); *see also Beahm v. Burke*, 982 F. Supp. 2d 451, 458 (E.D. Pa. 2013) (local government officials). Accordingly, it is recommended that Emick's Fifth Amendment due process claim be dismissed for failure to state a claim.

## D. Sixth Amendment Claim

Emick appears to claim that the defendants violated his Sixth Amendment right to a trial by jury.[4] But the offenses for which Emick was found guilty and sentenced to pay a fine were merely summary traffic offenses for which jail time was not an available penalty, and as such,

---

[3] The complaint does not appear to assert or to allege facts in support of a claim under the grand jury, double jeopardy, self-incrimination, or takings clauses of the Fifth Amendment.

[4] The complaint does not appear to assert or to allege facts in support of a claim under the speedy trial, public trial, confrontation, or assistance-of-counsel clauses of the Sixth Amendment.

Emick's right to a trial by jury was not implicated. *See Ashton v. City of Uniontown*, Civil Action No. 10-803, 2011 WL 891263, at *5 (W.D. Pa. Feb. 11, 2011); *Commonwealth v. Smith*, 868 A.2d 1253, 1257 (Pa. Super. Ct. 2005); *see also* 75 Pa. Cons. Stat. Ann. § 1301(d) (penalties for driving without a valid registration); *id.* § 1501(d) (penalties for driving without a valid license). Accordingly, it is recommended that Emick's Sixth Amendment right to a jury trial claim be dismissed for failure to state a claim.

### E. Fourth and Fourteenth Amendment Claims

Emick appears to claim that his two arrests and related criminal proceedings violated his Fourth Amendment right to be free from unreasonable seizures and his Fourteenth Amendment right to due process. In particular, he appears to argue that: (a) Officer Bentley lacked probable cause to detain Emick, place him under arrest, and charge him with the offenses of driving without a valid license and driving an unregistered vehicle; and (b) Officer Miller lacked probable cause to institute criminal proceedings for theft of services because Emick did not know or understand that he was required to pay for towing services before retrieving his automobile from Wood's Garage.

### 1. *Driving Without Valid License or Registration*

Emick has asserted a Fourth Amendment unreasonable seizure claim and a Fourteenth Amendment due process claim with respect to his arrest and conviction for driving without a valid license and driving an unregistered vehicle. But these claims are not cognizable under § 1983 under the favorable termination rule articulated by the Supreme Court of the United States in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that, where judgment in favor of a plaintiff in a § 1983 action for damages would necessarily imply the invalidity of the plaintiff's conviction or sentence, the plaintiff must first demonstrate "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." *Id.* at 486–87. In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reaffirmed this rule and broadened it to encompass equitable remedies as well, holding that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter what the relief sought (damages or equitable relief), no matter the target of the prisoner's suit

(state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81–82.

"*Heck* typically does not bar actions for Fourth Amendment violations." *Sanders v. Downs*, 420 Fed. App'x 175, 179 (3d Cir. 2011) (per curiam). "Because of doctrines like independent source and inevitable discovery, and especially harmless error, . . . a § 1983 action [alleging an unreasonable search or seizure], even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Heck*, 512 U.S. at 487 n.7 (discussing an unreasonable search claim). But, in determining whether success on a claim would necessarily impugn the integrity of the plaintiff's underlying conviction, the Third Circuit requires that a district court undertake a fact-based inquiry into whether a Fourth Amendment claim implies the invalidity of the underlying conviction. *See Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 448 (3d Cir. 2005), *abrogated on other grounds*, *Dique v. N.J. State Police*, 603 F.3d 181, 188 (3d Cir. 2010). This "fact-based approach requires a district court to inquire into the nature of the criminal conviction and the antecedent proceedings." *Id.* at 451.

> In situations where the evidence seized as a result of an unlawful search or arrest was used to convict the defendant, district courts examine the factual circumstances to determine whether doctrines such as independent source, inevitable discovery, or harmless error would have permitted the introduction of the evidence. Where it is impossible or improbable that such doctrines would have permitted the introduction of the evidence at issue in the criminal proceedings,

the *Heck* favorable-termination rule applies. *Id.* at 448–49.

Here, following a bench trial, Emick was convicted by the Lycoming County Magisterial District Court of driving without a valid license and driving an unregistered vehicle, both of which are summary offenses, and sentenced to pay a fine. *Commonwealth v. Emick*, Docket Nos. MJ-29102-TR-0000590-2014, MJ-29102-TR-0000591-2014 (Lycoming Cty. Magis. Dist. Ct. filed Aug. 16, 2014), *aff'd*, Docket No. CP-41-SA-0000057-2014 (Lycoming Cty. C.C.P. Nov. 14, 2014). Emick took a *de novo* appeal to the Lycoming County Court of Common Pleas, which affirmed the conviction. *Commonwealth v. Emick*, Docket No. CP-41-SA-0000057-2014 (Lycoming Cty. C.C.P. Nov. 14, 2014). He did not pursue any further appeals.

In his complaint, Emick has admitted that he did not possess a valid state-issued driver's license or a valid state-issued vehicle registration, presenting a privately issued "driver's license" and a privately issued

"registration" to Officer Bentley instead. Based on the nature of the offenses for which Emick was convicted, it is abundantly clear that both his Fourth and Fourteenth Amendment claims arising out of the August 16, 2014, arrest are barred by *Heck*, as a finding by this Court that his arrest and prosecution on these charges was unlawful would necessarily imply the invalidity of his state criminal convictions.

Accordingly, it is recommended that Emick's Fourth Amendment unreasonable seizure and Fourteenth Amendment due process claims arising out of his August 16, 2014, arrest and subsequent prosecution for driving without a valid driver's license and driving an unregistered vehicle be dismissed for failure to state a claim.

### 2. Theft of Services

Emick has asserted a Fourth Amendment unreasonable seizure claim and a Fourteenth Amendment due process claim with respect to his arrest and prosecution for theft of services.

As the defendants note, "[t]he Fourth Amendment prohibits officers from arresting a citizen without probable cause or without privilege to do so." *Tarapchak v. Lackawanna Cty.*, 173 F. Supp. 3d 57, 86 (M.D. Pa. 2016). Emick was arrested on September 18, 2014, by a non-party state

trooper based on an arrest warrant issued on the basis of a criminal complaint filed by defendant Miller. It is well-established that "action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages." *Hamilton v. Leavy*, 322 F.3d 776, 782–83 (3d Cir. 2003); *see also Tarapchak*, 173 F. Supp. 3d at 87 (quoting *Hamilton*). There is nothing to indicate that the arrest warrant upon which Emick's September 18, 2014, arrest was based is invalid on its face. Thus, it is clear that Emick has failed to state a Fourth/Fourteenth Amendment false arrest claim against this non-party state trooper.

But the defendant at issue here is Officer Miller, and the theory of liability is more properly framed as a Fourth/Fourteenth Amendment malicious prosecution claim. To prove a Fourth/Fourteenth Amendment malicious prosecution claim, a plaintiff must establish the following: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81–82

(3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

First, in cases where a plaintiff has sued a police officer for malicious prosecution, the plaintiff bears the burden of showing that the police officer "initiated" the criminal proceedings being challenged. *Weaver v. Beveridge*, No. 09-CV-2357, 2012 WL 7964544, at *7 (M.D. Pa. Sept. 12, 2012). This is because, in the typical case, it is a prosecutor, not a police officer, who "initiates" criminal proceedings against an individual. *Id.* As we have previously held, "a plaintiff can only proceed against a police officer under a malicious prosecution theory if the officer knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Id.* (citing *Domenech v. City of Philadelphia*, No. 06-1325, 2009 WL 1109316, *8 (E.D. Pa. Apr. 23, 2009) (internal quotation marks omitted)); *see also Merrero v. Micewski*, No. 96–8534, 1998 WL 414724, at *6–*7 (E.D. Pa. July 22, 1998) ("A police officer may only be held to have 'initiated' a criminal proceeding if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."). Here, Emick has not alleged that Miller "knowingly provided false information." Indeed, Emick has

admitted in his complaint that he recovered his vehicle from Wood's Garage without payment of fees incurred for towing services, and that he later paid the outstanding towing fee.

But even assuming *arguendo* that Officer Miller did initiate the criminal proceedings, Emick has failed to plausibly allege that Officer Miller lacked probable cause to initiate criminal proceedings for theft of services. Probable cause to arrest exists when the facts and circumstances within the charging officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Probable cause is "defined in terms and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing a crime." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000). The evidentiary standard for probable cause is "significantly lower than the standard which is required for conviction." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). Courts should make their probable cause determination on the "totality of the circumstances . . . [which means] that a court should not isolate pieces of evidence when it determines whether

there was probable cause for a prosecution." *Halsey v. Pfeiffer*, 750 F.3d 273, 301–02 (3d Cir. 2014) (internal citation omitted). Although the question of probable cause in a Section 1983 action is generally one for the jury, is it appropriate for a court to find probable cause as a matter of law "if taking all of [the plaintiff's] allegations as true and resolving all inferences in her favor, a reasonable jury could not find a lack of probable cause for [plaintiff's arrest]." *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir.1998).

Here, as noted above, Emick has admitted in his complaint that he took his automobile from Wood's Garage without paying the towing fees incurred in transporting the vehicle from the roadside site of his August arrest to the garage where it had been stored. Under state law, absconding without payment or offer to pay compensation for transportation services gives rise to a rebuttable presumption that the service was obtained by deception as to intention to pay. *See* 18 Pa. Cons. Stat. Ann. § 3926(a)(4); *Amicone v. Shoaf*, 620 A.2d 1222, 1224–25 (Pa. Super. Ct. 1993). Notwithstanding the allegation that he did not know that he was required to pay for towing services, the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, are nevertheless sufficient to establish

that Officer Miller had probable cause to initiate criminal proceedings for theft of services.

Accordingly, it is recommended that Emick's Fourth Amendment unreasonable seizure and Fourteenth Amendment due process claims arising out of his September 18, 2014, arrest and related prosecution for theft of services be dismissed for failure to state a claim.

### F. Municipal Liabilty

Emick seeks to hold Officer Bentley's and Officer Miller's municipal employers liable for the alleged constitutional violations as well.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690.

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather,

a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Alternatively, "[a] municipality may be held liable under § 1983 for failure to train, monitor, or supervise, [but] only where the plaintiff can 'identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Watson*, 629 F.

Supp. 2d at 487 (quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)); *see also Nawuoh*, 802 F. Supp. 2d at 645 ("While municipal liability under § 1983 originally hinged on affirmative policies, or customs, modern jurisprudence has extended it to a [municipality]'s failure to train, supervise and discipline its officers.").

The complaint in this case does not identify any affirmative policy or custom adopted or promulgated by the Borough of Montoursville or the City of Williamsport. Although it does allege, in cursory fashion, that the municipalities failed to adequately train, monitor, and supervise their employees, defendants Bentley and Miller, it fails to allege any specific training, the absence of which can be said to have caused the alleged constitutional violations. Moreover, Emick has failed to allege any facts from which a factfinder might infer actual or constructive knowledge by municipal policymakers of a previous pattern of similar violations, or of the allegedly inadequate training—a prerequisite to imposing § 1983 liability on a municipality. *See Colburn v. Upper Darby Twp.*, 838 F.2d 663, 672 (3d Cir. 1988); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident

includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brown v. City of Pittsburgh*, 586 F.3d 263, 292–93 (3d Cir. 2009) (recognizing that where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy").

Moreover, "for there to be municipal liability, there . . . must be a violation of the plaintiff's constitutional rights." *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003). Because Emick has failed to state a federal civil rights claim against the individual defendants, Officers Bentley and Miller, he simply cannot, as a matter of law, establish a *Monell* municipal liability claim against the municipal defendants, Borough of Montoursville and City of Williamsport. *See id.*; *Startzell v. City of Philadelphia, Pa.*, 533 F.3d 183, 204 (3d Cir. 2008).

Accordingly, it is recommended that Emick's § 1983 claims against the Borough of Montoursville and the City of Williamsport be dismissed for failure to state a claim.

## G. State Law Claims

Emick claims that the defendants violated his rights under the Pennsylvania Constitution and under state common law. But there is no private cause of action for damages under the Pennsylvania Constitution. *See Jones v. City of Philadelphia*, 890 A.2d 1188, 1208–16 (Pa. Commw. Ct. 2006) (considering claim for damages under this same provision), *appeal denied*, 909 A.2d 1291 (Pa. 2006) (mem. table decision); *see also Heckensweiler v. McLaughlin*, 517 F. Supp. 2d 707, 716–17 (E.D. Pa. 2007) (same) (citing *Jones*, 890 A.2d at 1216); *see also Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 Fed. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.") (citing *Jones*, 890 A.2d at 1208).

Moreover, to the extent Emick seeks to assert state-law tort claims against the defendants, the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa. Cons. Stat. Ann. § 8541 *et seq.*, generally grants local agencies immunity from state-law tort claims, with a few exceptions not applicable in this case. *See* 42 Pa. Cons. Stat. Ann. §§ 8541, 8542; *see also Rittenhouse Entertainment, Inc. v. City of Wilkes-Barre*, 861

F. Supp. 2d 470, 489 (M.D. Pa. 2012). This immunity has been further extended to individual employees of local agencies for acts within the scope of their employment, provided their conduct does not amount to a crime, actual fraud, actual malice, or willful misconduct, none of which has been plausibly alleged in this case. *See* 42 Pa. Cons. Stat. Ann. §§ 8545, 8550; *see also Campbell v. Moore*, 92 Fed. App'x 29, 34 (3d Cir. 2004).

Accordingly, it is recommended that Emick's state constitutional and common law tort claims be dismissed for failure to state a claim.

### H. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Based on the facts alleged in the complaint, it is apparent that amendment in this case would be futile. It is therefore recommended that the complaint be dismissed *without* leave to amend.

### IV. RECOMMENDATION

For the foregoing reasons, it is recommended that:

1. The defendants' motions to dismiss (Doc. 2; Doc. 3) be

**GRANTED**;

2.    The complaint (Doc. 1) be **DISMISSED** for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6); and

3.    The Clerk be directed to mark this case as **CLOSED**.


Dated: May _12_, 2017

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PETER DELANCE EMICK,

     Plaintiff,

     v.

BOROUGH OF
MONTOURSVILLE, et al.,

     Defendants.

CIVIL ACTION NO. 4:16-cv-01856

(BRANN, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated May __*12*__, 2017. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated: May _12_, 2017

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge